SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**MIRA CHERNICK, MASB #696845**
Assistant United States Attorney
Mira.Chernick@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **3:25-cr-00337-YY** |
| **v.** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS (ECF NO. 45)** |
| **TRACY MOLINA,** | |
| **Defendant.** | |

Defendant Tracy Molina is charged by Superseding Information with three counts of Failing to Comply with Lawful Order in violation of 41 C.F.R. § 102-74.385. She seeks dismissal of all counts on the basis that this prosecution violates her First Amendment rights and that the regulation under which she is charged represents an unconstitutional delegation of Congressional power. Both of these arguments fail.

**Government Response to Defendant's Motion to Dismiss                Page 1**

## I.    BACKGROUND

Immigration and Customs Enforcement (ICE) occupies a building on South Macadam Avenue in Portland that has been the target of protests and demonstrations over the years. ICE agents share this space with other federal agents, including those responsible for enforcing federal laws prohibiting drug trafficking and child exploitation.  The building (hereinafter referred to as the "Macadam Building") has sustained extensive damage from demonstrators in recent years. In the weeks and months leading up to the events at issue here, demonstrators at the Macadam Building dealt damage to the vehicle entry gate in the driveway, the front entrance, the exterior video surveillance devices, and the exterior security post facility of the building. Demonstrators threw fireworks, rocks, and bottles at the building and defaced it with graffiti. Because of this, the Department of Homeland Security (DHS) assigned extra officers to protect the building and its occupants.

Defendant is charged by information in this case for three separate incidents occurring at the Macadam Building in July and August of 2025. While those three dates are the only charged incidents in this case, defendant was present at the Macadam Building on a number of occasions surrounding the charged conduct. Prior to being charged by Information and Superseding Information, the defendant had multiple encounters with law enforcement and received multiple citations for her conduct.

### *Count 1: July 20, 2025*

On July 20, 2025, shortly before 10 p.m., the defendant was present at protests outside of the Macadam Building. She was carrying a long pole or walking stick and yelling at officers. She repeatedly entered the driveway of the Macadam Building despite orders to leave federal property.

**Government Response to Defendant's Motion to Dismiss**                    **Page 2**

*Count 2: July 28, 2025*

On July 27, 2025, the defendant was present at protests outside of the Macadam Building. She threw a water bottle towards the building and hit an ICE vehicle as it was departing federal property with a detainee inside. She repeatedly blocked the driveway while ICE agents were trying to drive in or out of the Macadam Building, and was warned multiple times to get off of federal property and stop blocking the driveway.  The defendant told federal law enforcement agents that she was "going to shoot bows and arrows at you guys." ECF No. 33, Exhibit 1. About an hour later, federal agents informed a counter-protester who was trying to clean graffiti off of the gate of the Macadam Building that he also needed to be off of federal property.  *Id.*

On July 28, 2025, the defendant was cited for ignoring multiple orders to leave federal property after she and other protesters blocked the driveway to the Macadam Building while vehicles were trying to exit. This was her third citation for similar conduct at the Macadam Building, and she was provided with a cease-and-desist letter warning her of potential criminal consequences for future violations.

*Count 3: August 21, 2025*

The defendant's conduct escalated during the month of August.  On August 10, 2025, a couple of weeks after she threatened to shoot federal agents with bows and arrows, officers saw her in the immediate vicinity of the Macadam Building carrying a bow on her back.  On August 18, 2025, officers observed the defendant walking the perimeter of the Macadam Building carrying what appeared to be a firearm, specifically a "Micro Conversion Kit for a Glock 20/21."[1]

---

[1] An image of the bow is included on page 2 of Government's Exhibit 2 to ECF No. 33.  An image of the gun is included on page 3 of the same exhibit.

**Government Response to Defendant's Motion to Dismiss**                    **Page 3**

On August 21, 2025, the defendant again refused to leave federal property after repeated orders to do so.  Shortly after 10 p.m., multiple warnings were issued to clear the driveway to allow vehicles to exit safely.  A couple of minutes later, federal officers saw the defendant following a government vehicle as it left the Macadam Building.  She returned to the building about a minute later and again came on to federal property.  She was charged by Information for this violation the following day. On January 9, 2026, the defendant was charged by Superseding Information with the July violations, in addition to the August 21 violation.

### *Performance on Pretrial Supervision*

As part of her conditions of pretrial supervision, the Court ordered defendant not to enter a specifically defined geographical area surrounding the Macadam Building.  The defendant violated that order on August 27, September 7, October 13, October 19, and October 21 of 2025.

## II.    DISCUSSION

The Constitution grants Congress the authority "to dispose of and make all needful Rules and Regulations respecting . . . Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Congress has long exercised this authority to protect federal buildings. *See, e.g.*, Pub. L. 80-566, 62 Stat. 281; 14 Fed. Reg. 2799 (May 27, 1949) (authorizing Federal Works Agency to appoint uniformed guards for this purpose).

In response to the terrorist attacks of September 11, 2001, Congress enacted the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002). As relevant here, the statute transferred authority for law enforcement and related security functions for Federal properties from the General Services Administration (GSA) to DHS. The act requires the Secretary to "protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government . . . and the persons on the property." 40 U.S.C. § 1315(a). This

**Government Response to Defendant's Motion to Dismiss**                                    **Page 4**

further authorized "[t]he Secretary, in consultation with the Administrator of General Services" to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property." *Id.* § 1315(c)(1). Individuals who violate these regulations "shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both." *Id.* § 1315(c)(2).

Significantly, this authority explicitly includes the ability to police the property and areas around Federal buildings. The Secretary may designate "officers and agents for duty in connection with the protection of property owned or occupied by the Federal Government and persons on the property, including duty in areas outside the property to the extent necessary to protect the property and persons on the property." *Id.* § 1315(b)(1). While engaged in such duties, these officers and agents are authorized to "conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Federal Government or persons on the property[.]" *Id.* § 1315(b)(2)(E); *see also id.* § 1315(e) (providing additional authorities to enforce Federal, state, and local laws "outside Federal property"). Courts have interpreted these authorities as conferring on federal agencies "not only the right, but also the duty, to see that government property under its charge and control is in proper condition for normal usage, so that government business may continue." *United States v. Cassiagnol*, 420 F.2d 868, 874 (4th Cir. 1970).

Until recently, Federal regulations only directed "[p]ersons in and on property [to] comply with official signs . . . and with the lawful direction of Federal police officers and other authorized individuals" and prohibited "[a]ll persons entering in or on Federal property . . . from . . . exhibiting disorderly conduct, or exhibiting other conduct on property that—(a) Creates loud or unusual noise or a nuisance; (b) Unreasonably obstructs the usual use of entrances" and other

**Government Response to Defendant's Motion to Dismiss** **Page 5**

areas, "(c) Otherwise impedes or disrupts the performance of official duties by Government employees," or "(d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner." 41 C.F.R. §§ 102-74.385 - 390 (2015). Courts have long upheld this regulation against vagueness and overbreadth challenges. *See, e.g.*, *United States v. Stansell*, 847 F.2d 609, 610-16 (9th Cir. 1988). This regulation was limited to conduct on property owned or leased by the General Services Administration (GSA), despite the fact that the Government has the statutory authority to regulate such conduct in areas outside Federal buildings to the extent necessary to protect property and persons on the property.

This statutory authority has since been transferred to the Secretary of Homeland Security, who is authorized to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property." 40 U.S.C. § 1315(c)(1). In an effort to close this gap, promote consistency, and address new problems, the Secretary of Homeland Security issued new regulations in addition to those already at 41 CFR establishing—among other things—regulatory offenses for "[o]bstructing the usual use, enjoyment, or access to Federal property, including but not limited to use of entrances, exits, exterior areas" and other various areas, and for "[t]respassing, entering, or remaining in or upon areas of Federal property closed to the public." 6 C.F.R.§ 139.35(d),(i). The obstruction and trespassing ordinances are substantively coextensive with the predecessor GSA regulation,

**Government Response to Defendant's Motion to Dismiss**                    **Page 6**

except that they also cover conduct outside Federal property to the extent necessary to protect the property and persons on the property.

### A.  41 C.F.R. § 102-74.385 Is Not Unconstitutional

#### i.    The restrictions placed on the defendant's actions on federal property were reasonable.

The defendant asserts that the charges against her violate her First Amendment rights "because the government sought to exclude Ms. Molina from the [Macadam Building] completely and indefinitely." ECF No. 45.  This argument misrepresents both the defendant's actions and those of federal officers.  The defendant was not excluded from federal property because she was exercising her First Amendment rights.  She was excluded for blocking the driveway, interfering with the use of a federal building, and preventing the safe passage of vehicles into and out of the building.  She was also not excluded "completely" or "indefinitely." The defendant participated in protest activity at the Macadam Building on numerous occasions on which she was not cited.  The charged violations represent specific incidents in which the defendant stood in the driveway and repeatedly entered federal property after being ordered multiple times to clear the way.  The government reasonably restricted the defendant's conduct on federal property in order to protect the property and its ability to function as a government building.  *See Cassiagnol*, 420 F.2d at 876–77 ("It is reasonable and constitutional to delegate to the agency charged with maintenance and protection of government property the right to fix the hours and places where the property may be entered by the public, as well as minimum

**Government Response to Defendant's Motion to Dismiss**                                    **Page 7**

acceptable conduct thereon, and to provide for the punishment of those violating such regulations.")

### ii. 41 C.F.R. § 102-74.385 is not overly broad as applied to the defendant.

Defendant argues that 41 C.F.R. § 102-74.385 is overbroad as applied to defendant because it "was enforced against protected activity." ECF No. 45 at 10. Specifically, she claims that "the precipitating conduct was Ms. Molina's mere presence on federal property, expressing her views in opposition to ICE." *Id.* That is not true. As discussed above, the precipitating conduct was the defendant's persistent interference with the operation of the Macadam Building as a federal facility, despite orders to stop. This conduct occurred against a backdrop of threatening conduct by the defendant towards federal officers, including a direct verbal threat and at least two occasions on which she appeared around the building carrying deadly weapons.

On at least one occasion, shortly after the defendant was ordered to leave federal property, a counter-protester attempting to clean up graffiti was also ordered off of the property. As intended, the regulation cited in this case was enforced to protect federal property and to allow a government facility to function. The defendant's baseless assertion that "agents specifically sought her out and quelled her speech" is contrary to the evidence and does not warrant dismissal.[2]

### iii. 41 C.F.R. § 102-74.385 is not vague.

The defendant also asserts that the regulation charged in this case is unconstitutionally vague because "it can regulate First Amendment activity and does not provide sufficient

---

[2] The defendant labels this as an overbreadth argument, but appears to instead assert a selective enforcement claim. The defendant's bare assertions do not establish either of the two elements of a selective enforcement claim: that the enforcement of the law against her had a "discriminatory effect," and that law enforcement was motivated by "a discriminatory purpose." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012).

**Government Response to Defendant's Motion to Dismiss**                    **Page 8**

specificity to inform citizens what conduct is prohibited." ECF No. 45 at 11. Defendant complains specifically that two terms, "lawful direction" and "authorized individuals," are unconstitutionally vague. Defendant's claims lack merit.

Under the Due Process clause, a statute or regulation should "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits in a manner that does not encourage arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). When a regulation covers both conduct and speech, courts must determine if the overbreadth is "not only real, but substantial as well, judged in relation to the [regulation's] plainly legitimate sweep." *United States v. Stansell*, 847 F.2d 609, 613-14 (9th Cir. 1988). Applying these principles, court after court has held that 41 C.F.R. § 102-74.385 and similar laws are not overbroad nor void for vagueness. *Stansell*, 847 F.2d at 616; *United States v. Brice*, 926 F.2d 925, 930 (9th Cir. 1991); *United States v. Sachs*, 679 F.2d 1015, 1018 (1st Cir. 1982); *United States v. Shiel*, 611 F.2d 526, 528 (4th Cir. 1979); *United States v. Cruscial*, No. 3:18-CR-00465-JR, 2019 WL 1087150, at *4 (D. Or. Mar. 7, 2019). In *Stansell*, the Ninth Circuit held that the precursor to 41 CFR § 102-74.385, which is nearly identical to the current version, is neither overbroad nor void for vagueness because it "identifies with sufficient definitiveness what a person must do, what type of orders and directions they must obey, and a fair warning of the types of conduct that is prohibited." *Stansell*, 847 F.2d at 616. Similarly, in *Cruscial*, Judge Russo held that the very regulations at issue here, applied in circumstances nearly identical to the present case, are not vague or overbroad. *Cruscial*, 2019 WL 1087150, at *4.

This Court should find the same. A statute is not unconstitutionally overbroad unless it "reaches a substantial number of impermissible applications." *United States v. Szabo*, 760 F.3d 997, 1004 (9th Cir. 2014). If the challenged terms "are clear in their application to [the

**Government Response to Defendant's Motion to Dismiss**                                    **Page 9**

defendant's] conduct . . . [the] vagueness challenge must fail." *Id*. at 1003. Here, the challenged terms were clear. The federal officers who issued orders to leave federal property via the long range acoustic device (LRAD) and verbally were in full Federal Protective Service uniforms, clearly identifying them as federal law enforcement officers. The orders they gave to leave federal property—which is demarcated with a thick blue line that says, "U.S. Government Property Do Not Block"—were unambiguous. They gave the orders multiple times, and were ignored multiple times. They had reason to believe the defendant understood the order because she had previously been cited for failing to obey such orders. They issued the defendant a cease-and-desist notice that informed her of the criminal consequences of continued non-compliance with those orders. The defendant was given a reasonable opportunity to comply and chose instead to repeatedly come back onto federal property to interfere with the movement of government vehicles. Thus, as applied to the defendant, the regulation's requirements were clear: she was required to obey uniformed officers' commands to stay off of marked federal property.

The defendant's motion to dismiss fails to identify any actions of the officers that indicate she was cited or arrested for her expressive activity as opposed to her charged conduct: repeatedly coming onto federal property and ignoring orders to stop. The charged regulation is not unconstitutional and the motion should be denied.

### B. The Charged Regulation Was Promulgated Pursuant to A Valid Delegation of Legislative Power by Congress

Defendant relies on dicta and two dissenting opinions to argue that the charges should be dismissed because the regulation she is charged with repeatedly violating was promulgated under 40 U.S.C. § 1315(c), which defendant asserts "is an unconstitutional delegation of legislative

**Government Response to Defendant's Motion to Dismiss**                    **Page 10**

power by Congress." ECF No. 45 at 13. This exact argument has been rejected by multiple courts, including those in this district. *See, e.g.*, *United States v. Kittel*, No. 6:19-CR-00240-MK, 2021 WL 3823185, at *5 (D. Or. Aug. 26, 2021); *United States v. Cruscial*, 2019 WL 1087150, at *3; *United States v. Mumford*, No. 3:17-CR-0008-JCC, 2017 WL 652449, at *4 (D. Or. Feb 16, 2017). All of these courts found persuasive the reasoning in *United States v. Cassiagnol*, 420 F.2d 868, 876 (4th Cir. 1970), in which the Fourth Circuit "already addressed this precise issue with this statute's predecessor and determined it was not a violation of the non-delegation doctrine." *Mumford*, 2017 WL 652449, at *3.

*Cassiagnol* held that 40 U.S.C. § 318, the predecessor to § 1315(c), did not violate the non-delegation doctrine because the statute (1) limited the General Service Administration's regulation authority to property under its control, (2) restricted the GSA to only "mak[ing] needful rules and regulations to maintain and protect such property and ensure its use for the authorized purpose," and (3) specified the limits of punishments for GSA regulations. 420 F.2d at 876. The court also noted that this delegation of power is not unusual, and Congress has delegated similar powers to agencies like the National Park Service, Forest Service, and Bureau of Land Management. *Id.*

Defendant's argument finds no support in the law. This Court should join with the Fourth Circuit, and with district courts in Oregon and across the country, in rejecting it. *See, e.g.*, *United States v. Gosar*, No. 19-306, 2020 WL 231083, at *1 (W.D. Wash. Jan. 15, 2020) (adopting the reasoning in *Mumford* and *Cruscial*); *United States v. Adams*, 502 F. Supp. 21, 24 (S.D. Fla. 1980) ("This delegation by Congress authorizing GSA to promulgate regulations relating to activities on government property is not an unconstitutional delegation of legislative power.") (citing *Cassiagnol*, 420 F.2d 868).

**Government Response to Defendant's Motion to Dismiss**                    **Page 11**

## III.     CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny defendant's Motion to Dismiss.


Dated: April 14, 2026                              Respectfully submitted,

                                                   SCOTT E. BRADFORD
                                                   United States Attorney

                                                   /s/ *Mira Chernick*
                                                   MIRA CHERNICK, MASB #696845
                                                   Assistant United States Attorney