Ellie Riegel, OSB #221879
Assistant Federal Public Defender
Email: Ellie_Riegel@fd.org

Peyton Lee, OSB #164224
Assistant Federal Public Defender
Email: Peyton_Lee@fd.org

101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRACY MOLINA,<br><br>Defendant. | Case No. 3:25-cr-00337-YY-1<br><br>DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE (ECF 47) IN OPPOSITION TO MOTION FOR A JURY TRIAL (ECF 44) |

Defendant, Tracy Molina, through her counsel Ellie Riegel and Peyton Lee, respectfully moves this Court to empanel a jury to hear this matter. This case presents circumstances that warrant a trial by jury under the Sixth Amendment, and even if a jury is not constitutionally mandated, this Court should exercise its discretion and grant Ms. Molina a jury trial in recognition of the principles underlying the Sixth Amendment.

## I. Ms. Molina's right to a jury trial is implicated because the petty presumption is overcome in this case.

The executive's indications of seriousness should be considered in the ultimate determination of whether a jury trial is required.[1] The government asserts that the Court, in *United States v. Nachtigal*, "rejected an argument almost identical" to that of Ms. Molina. ECF 47 at 4 (citing *Nachtigal*, 501 U.S. 1 (1993)). However, *Nachtigal* stands for a different proposition. There, the Court rejected the argument that it was "the Secretary of the Interior, and not Congress, [that] ultimately determined the maximum prison term," explaining that Congress had set the six-month maximum penalty and any discretion the Secretary exercised when deciding penalties was done so within the bounds set by Congress. *Nachtigal*, 501 U.S. at 4.

Ms. Molina, on the other hand, argues that because the legislature delegated its rulemaking authority to the executive, the executive's "objective indications" of seriousness, beyond the legislature's statutory maximum prison term, are important in the analysis. *See Blanton v. City of N. Las Vegas*, 489 U.S. 538, 541 (1989). While it is true that often the legislature's determination of the maximum authorized period of incarceration provides the "most relevant" criterion of seriousness, additional penalties are also important. *United States v. Lewis*, 518 U.S. 322, 326 (1996). In *Blanton*, the Court explained that the "judiciary should not substitute its judgment as to seriousness for that of the legislature," but it did not address how the executive's expression of seriousness should be assessed. 489 U.S. at 541. Here, the "congressional determination" is, at least partially, "stripped of its 'legislative' character"

[1] The government's discussion of *United States v. Cruscial*, 3:18-cr-00456, 2019 WL 1087150 (D. Or. Mar. 7, 2019) and *United States v. Pearl*, 3:25-00280, 2026 WL 353358 (D. Or. Feb. 9, 2026) is inapposite as neither of those cases raised the same arguments or concerns that are raised by Ms. Molina.

because the executive tacks on additional penalties and indications of seriousness outside the bounds of the statutory maximum prison sentence. *See Nachtigal*, 501 U.S. at 4.

One of these penalties is the looming threat of a "domestic terrorist" designation. The potential surveillance, sanctioned by Congress, that Ms. Molina faces is serious enough to warrant a jury trial. *See* 6 U.S.C. § 124h-1 (requiring greater information sharing between agencies and states related to threats of terrorism); 6 U.S.C. § 1137a (enhancing law enforcement training related to terrorism); *see also* 18 U.S.C. § 2331(5) (defining domestic terrorism). Even the threat of being placed on an FBI watchlist is concerning enough to implicate the right to a jury trial because, when it comes to matters of national security, processes and details are rarely explained or even shared.[2] A designation like this could have lifelong implications. *See Fallen v. United States*, 290 A.3d 486, 499 (D.C. Cir. 2023) (holding that petty presumption is overcome when a defendant, if found guilty, is required to register as a sex offender); *Bado v. United States*, 186 A.3d 1243, 1262 (D.C. Cir 2018) (holding that the penalty of deportation, in addition to the maximum penalty, overcomes the petty presumption).

Finally, while Ms. Molina acknowledges that the Court in *Blanton* did away with the "nature of the offense" analysis when determining the seriousness of an offense, this is a case where the legislature's "objective indications" of seriousness are exceptionally disproportionate

[2] In addition to the executive orders and presidential memos asserting that members of Antifa are domestic terrorists, there are additional reports and videos that discuss an FBI watchlist of protesters who have been deemed "domestic terrorists," in Portland, Maine. Although the government denies the list, agents are still making the threats and there is not a simple way to determine whether lists of this kind exist. Emily Allen, *DHS Denies Having a Watchlist. These Videos Show Federal Agents Telling Mainers Otherwise*, Portland Press Herald (Feb. 25, 2026), https://www.pressherald.com/2026/02/24/dhs-denies-having-a-watchlist-these-videos-show-federal-agents-telling-mainers-otherwise/.

to those of the executive, such that less emphasis on the maximum statutory penalty is warranted. 489 U.S. at 541.

The government seems to assert that once the legislature prescribes a maximum penalty and then delegates to the executive the power to define the crime, the executive may shield itself from jury trials by criminalizing conduct in its regulations that it subsequently announces to be serious. This cannot be what the Court in *Blanton* or *Nachtigal* meant. Instead, those cases explain that the legislature, as a voice of the people, decides when offenses are sufficiently serious to require a jury trial and its primary mechanism to do so is by attaching statutory penalties, namely maximum terms of incarceration. *See Blanton*, 489 U.S. at 543; *Nachtigal*, 501 U.S. at 3. Those cases do not contemplate matters where the executive's admonishments and threats related to certain offenses supersede the legislature's original determination. When the President makes statements from the Oval Office, asserting that protesters in Portland, Oregon "are paid terrorists" and "paid agitators," who are "very dangerous for our country" and promises to "wipe [protesters] out," any earlier indication of seriousness by the legislature is overshadowed.[3] The executive's words and actions matter, and here, those words and actions inform whether this offense is "serious" enough for the Sixth Amendment right to a jury trial to attach. By its own declarations, the executive has publicly announced that the alleged conduct at issue in this case, and other similar cases, is serious and therefore Ms. Molina must be protected by her right to a jury trial so that she may not be subjected to serious penalties without sufficient due process.

---

[3] KOIN 6, *U.S. President Donald Trump Mentions Portland in Sept. 5, 2025 Interview*, YouTube (Sep. 5, 2025), https://www.youtube.com/watch?v=_dTSbtfXwDg.

## II. The Court should exercise its discretion to order a jury trial because the voice of the community is necessary to decide this case.

The Court should exercise its discretion and grant a jury trial in this matter because the circumstances call for community members to act as fact finders as the government prosecutes people expressing political dissent. As the government points out, this Court is relatively unbound by precedent in determining whether to grant a jury trial as a matter of discretion. ECF 47 at 6. As such, this Court must rely on constitutional principles to assess the present circumstances. In two cases where district courts granted jury trials for petty offenses, courts emphasized "unusual" and "unique" facts and circumstances that make it so cases "would benefit from a jury's collective decision-making." *United States v. Greenpeace, Inc.*, 314 F. Supp. 2d 1252, 1264 (S.D. Fla. 2004); *United States v. Rodriguez*, No. 1:10-CR-120, 2010 WL 11531202, at *1 (D. Idaho Oct. 15, 2010); *see also, United States v. Beard*, 313 F.Supp. 844, 845-46 (Minn. Dist. Ct. 1970). As the court in *Greenpeace* explained, "Juries are not perfect, but neither are judges—even those with life tenure—and juries, because of their nature, better embody and represent the judgment of the community." 314 F. Supp. 2d at 1264.

The government likens these cases to *United States v. Cruscial*, 3:18-cr-00465-JR, 2019 WL 1087150 (D. Or. Mar. 7, 2019), and *United States v. Camas*, No. 24-cr-00513, 2025 WL 1207542 (N.D. Cal Apr. 25, 2025) to contend "the facts and posture of [this] case are indistinguishable." ECF 47 at 7-8. The government disregards the significant differences in both fact and circumstances between those two cases and Ms. Molina's charges.

First, *Camas* dealt with charges that arose under conduct in a National Park. 2025 WL 1207542, at *1. There, the defendant was charged with two Class B misdemeanors related to driving under the influence of alcohol and operating a motor vehicle with too high blood alcohol

content. *Id.* (citing 36 C.F.R. § 4.23(a)(1)-(2)). Given that the regulations and conduct at issue in *Camas* have no similarities to the regulations or conduct here, *Camas* is not helpful in determining whether a jury trial is warranted in this matter.

Ms. Molina acknowledges, as she did in his original Motion for Jury Trial, that the court in *Cruscial* declined a jury trial for defendants charged under the same regulation for conduct occurring at the same location. *Cruscial*, 2019 WL 1087150 at *7. But *Cruscial* is not binding on this Court, and a more recent case on point in this district demonstrates that this Court may exercise its discretion to order a jury trial. *See United States v. Griffin*, No. 3:25-cr-00474-AB-1 (D. Or. Mar. 13, 2026) (ECF No. 24) (granting defendant's Motion for Jury Trial where defendant was charged with violating 41 C.F.R. § 102-74.385). Moreover, apart from sharing the same regulation and location, Ms. Molina's case presents facts and issues different from those in *Cruscial*. Namely, since *Cruscial* was decided in 2019, the executive—and particularly President Trump himself—has acted in extraordinary ways and changed the circumstances of the current protests. Since taking office again, President Trump has taken an authoritative view of the executive and asserted that neither he, nor his agents, are accountable to the laws or citizens of the United States. In the last four months alone citizens have been shot and killed by federal officers.[4] Rather than reassessing its tactics, the executive asserted that all ICE officers have

---

[4] Melissa Hellmann, *Eight People Have Died in Dealings with ICE so far in 2026. These Are Their Stories*, The Guardian (Jan. 28, 2026, at 08:00 EST), https://www.theguardian.com/us-news/2026/jan/28/deaths-ice-2026-; Jon Schuppe & Erik Ortiz, *Trump's DHS Immigration Enforcement Officers Have Shot 14 People Since September. Here's What to Know.*, NBC News (Feb. 24, 2026, at 07:30 PST), https://www.nbcnews.com/news/us-news/ice-shootings-list-border-patrol-trump-immigration-operations-rcna254202.

absolute immunity from criminal or civil liability.[5] These events decidedly demonstrate that, unlike the government contends, Ms. Molina's arrests do not arise under "the same local and national backdrop" as those in *Cruscial*. ECF 47 at 3. Rather, the facts and circumstances of this case are new and must be treated as such, and much more closely resemble the circumstances and facts of the *Griffin* case, which similarly dealt with ICE protests during this administration.

This trial will require a fact finder to assess the credibility of members of the executive and the agents charged with implementing its policies. It should be a jury of community members who decide whether Ms. Molina's arrests were made in good faith or whether officers were following the President's orders to plainly "wipe [protesters] out."[6] It should be a jury of community members who decide whether the executive has acted in contravention of the Constitution. *See Duncan v. Louisiana*, 391 U.S. 145, 155 (1968) ("A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government."). By empaneling a jury in this matter, this Court can help enact the Constitution's core protections and affirm that citizens represent the voice of the community.

---

[5] Homeland Security, @DHSgov, X (Jan. 13, 2026, 3:06 PM), https://x.com/DHSgov/status/2011213308968538361?s=20 ("REMINDER: 'To all ICE officers: You have federal immunity in the conduct of your duties. Anybody who lays a hand on you or tries to stop you or tries to obstruct you is committing a felony. You have immunity to perform your duties, and no one—no city official, no state official, no illegal alien, no leftist agitator or domestic insurrectionist—can prevent you from fulfilling your legal obligations and duties. The Department of Justice has made clear that if officials cross that line into obstruction, into criminal conspiracy against the United States or against ICE officers, then they will face justice.' @StephenM").

[6] KOIN 6, *U.S. President Donald Trump Mentions Portland in Sept. 5, 2025 Interview*, YouTube (Sep. 5, 2025), https://www.youtube.com/watch?v=_dTSbtfXwDg.

## III. Conclusion

For the reasons set forth above, it is respectfully requested that the Court should find that Ms. Molina is entitled to a jury trial due to the nature and seriousness of her case or alternatively should exercise its discretion to allow a jury trial in this matter.

Dated: April 28, 2026.

*s/ Ellie Riegel*
Ellie Riegel, OSB #221879

*s/ Peyton Lee*
Peyton Lee, OSB #164224